**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raymond WAGSTAFF,
Defendant–Appellant.**

No. 88–5508.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1988.
Decided Jan. 24, 1989.

Leslie L. Gladstone, Baltimore, Md., for defendant-appellant.

Veronica Marie Clarke, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., on brief), Washington, D.C., for plaintiff-appellee.

Before WINTER, Chief Judge, and SPROUSE and ERVIN, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

Defendant–Appellant Raymond Wagstaff was charged in a three-count indictment with bank robbery, in violation of 18 U.S.C. § 2113(a), bank larceny, in violation of 18 U.S.C. § 2113(b), and entry into a bank with intent to steal, in violation of 18 U.S.C. § 2113(a). After a jury trial,[1] Wagstaff was convicted on all the three counts. He was sentenced to imprisonment of twenty years on Count I, one year on Count II, and twenty years on Count III, the sentences to run concurrently.

On appeal, Wagstaff raises numerous challenges to his convictions. We find merit in Wagstaff's argument that the evidence was insufficient to show a taking "by intimidation," as required to prove a bank robbery under 18 U.S.C. § 2113(a), and that therefore the district court erred in denying his motion for judgment of acquittal on the charge of bank robbery. Accordingly, we reverse his conviction on Count I. We find no merit, however, in his other contentions and so affirm his convictions and sentences as to Count II and Count III.

I.

Wagstaff was arrested January 6, 1986, and charged with the December 30, 1985, robbery of the Baltimore City Irvington Federal Savings and Loan Association ("S & L"). The evidence presented at trial showed that Wagstaff entered the S & L, approached the tellers' counter, and put on a ski mask and sunglasses as he walked through an open gate into the teller area. He then began taking money from a teller's open cash drawer. Wagstaff succeeded in taking forty-five dollars in one dollar bills before a customer attacked him, forcing him to flee.

While in the S & L, Wagstaff was at all times at least eight feet from the nearest teller. He was neither wearing nor carrying a weapon. He never presented any kind of written note. Although there was testimony from a teller that Wagstaff seemed to be looking at her from behind his dark glasses, Wagstaff said nothing and made no overtly threatening gestures in the approximately fifteen seconds that he was at the cash drawer. The nearest teller testified that she was fearful during this time and that she had been instructed to assume that all persons taking money from the S & L were armed.

II.

Under 18 U.S.C. § 2113(a), bank robbery, as distinguished from bank larceny, requires the use of "force or violence, or ... intimidation." 18 U.S.C. § 2113(a). The indictment under which Wagstaff was charged did not allege the use of "force or violence." Wagstaff argues that the government did not offer sufficient evidence to show that he used "intimidation," and that therefore the district court erred in denying his motion for judgment of acquittal on the charge of bank robbery.

For intimidation to occur under 18 U.S.C. § 2113(a), a defendant's conduct must be "reasonably calculated to produce fear." *United States v. Amos*, 566 F.2d 899, 901 (4 Cir.1977); *United States v. Harris*, 530 F.2d 576, 579 (4 Cir.1976). As has been stated in the Fifth Circuit,

from the perspective of the victim, a taking "by intimidation" under section 2113(a) occurs when an ordinary person in the teller's position reasonably could infer *a threat of bodily harm from the defendant's acts ....* Under this test,

---

1. This was Wagstaff's second trial for these offenses. After Wagstaff was convicted and sentenced following his first trial, this court reversed the district court on grounds not raised in this appeal and remanded the case for a new trial. *See United States v. Wagstaff*, 822 F.2d 56 (4 Cir.1987) (per curiam) (unpublished).

the subjective courageousness or timidity of the victim is irrelevant; the acts of the defendant must constitute intimidation to an ordinary, reasonable person.

*United States v. Higdon*, 832 F.2d 312, 315 (5 Cir.1987) (citations omitted) (emphasis added), *cert. denied*, — U.S. —, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988).

Whether facts such as those presented in this case show evidence of intimidation sufficient to allow submission of the issue to a jury has not previously been considered in this circuit. In each of the Fourth Circuit cases in which the issue has been presented, all of which determined that the evidence of intimidation was sufficient, there was evidence that the defendant either explicitly threatened harm,[2] or implicitly possessed a weapon.[3] Nearly all of the cases raising this issue in other circuits also present evidence of intimidation not presented in the instant case.[4]

One Tenth Circuit opinion relied upon in the instant case by the government, however, found sufficient evidence of intimidation to require submission of the issue to a jury despite the absence of either any explicit threat of harm or any implicit threat of a weapon. The defendant in *United States v. Slater*, 692 F.2d 107 (10 Cir.1982), had allegedly walked unmasked and unarmed into a savings and loan branch office, proceeded behind the teller counter, and begun taking money from the tellers' stations. He "did not speak or interact with anyone, beyond telling a bank manager to 'shut up' when she asked what he was doing." *Id.* at 107–108. Although no one in the office was either harmed or overtly threatened with harm, the office personnel testified that they were badly frightened. *Id.* at 108.

In determining that there was an issue of fact as to intimidation, the *Slater* court noted that the defendant's "forceful and purposeful" acts constituted "aggressive behavior which very well could have been considered as intimidating by the jury." *Id.* at 109. The court surmised that the defendant's acts "obviously created a dangerous situation," that the defendant "relied upon the surprise and fear of the bank personnel," and that "an expectation of injury was reasonable in ... an incident of this kind where a weapon and a willingness to use it are not uncommon." *Id.*

If these criteria are determinative of whether a defendant's actions raise the issue of intimidation as a question of fact, then that issue would seem to be raised in the instant case. Defendant Wagstaff's "forceful and purposeful behavior" was certainly "aggressive." His actions "obviously created a dangerous situation." He appears to have "relied on the surprise and fear of the bank personnel." And, indeed, "in ... an incident of this kind ... a weapon and a willingness to use it are not uncommon."

The flaw in this analysis, however, is that it would seem to read the requirement of intimidation entirely out of the statute. It is hard to imagine a theft of money from a bank that could not be characterized as "forceful," "purposeful," and "aggressive." Any face-to-face theft would seem

---

2. *See, e.g., United States v. Epps*, 438 F.2d 1192, 1193 (4 Cir.1971) (defendant handed teller note stating "Put all your money in this bag and nobody will get hurt").

3. *See, e.g., Amos*, 566 F.2d at 901 (defendant "or his confederate entered the bank with his hand in his pocket [and] instructed the bank manager not to sound the alarm and the tellers to hand over the money"); *United States v. Carter*, 540 F.2d 753, 753 (4 Cir.1976) (evidence that defendant "had his hand in his pocket" and "stated he had a gun"); *Harris*, 530 F.2d at 579 (testimony that defendant handed teller a note stating "this is a holdup" and "placed his right hand in his pocket in such a manner that she assumed he had a weapon").

4. *See, e.g., Higdon*, 832 F.2d at 313, 315–316 (defendant repeatedly ordered tellers to put money in a bag, then directed them to lie on the floor and told them not to 'dare' to get up); *United States v. Hopkins*, 703 F.2d 1102, 1103 (9 Cir.) (finding that defendant's note reading "Give me all your hundreds, fifties and twenties. This is a robbery." implied a threat of harm), *cert. denied*, 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983); *United States v. Bingham*, 628 F.2d 548, 549 (9 Cir.1980) (defendant told teller that she had "three seconds" to give him money), *cert. denied*, 449 U.S. 1092, 101 S.Ct. 888, 66 L.Ed.2d 820 (1981); *United States v. Robinson*, 527 F.2d 1170, 1172 (6 Cir.1975) (defendant wore clothing in which a weapon could be concealed and stated "Give me all your money").

to create "a dangerous situation." A theft other than by surprise would be an impressive feat; "fear" must be *reasonable* fear *of bodily harm* based on the acts of the defendant. And the presumption that every robbery involves a weapon would seem to make the "intimidation" requirement redundant. The problem with the *Slater* approach, then, is that it substitutes a set of assumptions about the actions of a person taking money from a bank for the individualized analysis of that person's actual behavior called for by the § 2113(a) "intimidation" requirement. This in effect eliminates the statutory command that the government prove intimidation as a separate element of the crime of bank robbery.

For this reason, we respectfully decline to adopt the analysis employed by the Tenth Circuit in *Slater*. We do not doubt that being a spectator to theft from a bank and present during its commission may well be a fear-inducing experience. But where, as here, the thief was neither wearing nor carrying a weapon, produced no note and said nothing, and made no threatening gestures, we hold, as a matter of law, that the evidence is insufficient to show a taking "by intimidation" in violation of 18 U.S.C. § 2113(a). We are of the opinion that the district court erred in denying Wagstaff's motion for judgment of acquittal as to the charge of bank robbery. We therefore reverse Wagstaff's conviction on Count I.

### III.

We have carefully considered the remaining challenges Wagstaff raises in this appeal. We find, however, that those contentions are without merit. Accordingly, we affirm the convictions entered against and the sentences pronounced upon Wagstaff as to Count II and Count III. Wagstaff's sentence on Count III was of the same duration as the sentence on Count I, and all sentences were to run concurrently. There is thus no need to remand for resentencing.

*REVERSED IN PART AND AFFIRMED IN PART.*